Filed 3/18/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CITY OF GLENDALE, | B249094 |
| Plaintiff, Cross-defendant and Appellant, | (Los Angeles County Super. Ct. No. EC051903) |
| v. | |
| MARCUS CABLE ASSOCIATES, LLC, | |
| Defendant, Cross-complainant and Appellant. | |

APPEALS from a postjudgment order of the Superior Court of the County of Los Angeles, Donna Fields Goldstein, Judge. Reversed and remanded with instructions.

Rutan & Tucker, William M. Marticorena, Jeffrey T. Melching, Michelle D. Molko for Plaintiff, Cross-defendant and Appellant.

Coblentz Patch Duffy & Bass, Richard R. Patch, Ann E. Johnston, Frederick C. Crombie for Defendant, Cross-complainant and Appellant.

## INTRODUCTION

As explained below, pursuant to Code of Civil Procedure section 2033.420 (section 2033.420), under certain circumstances, a party to a civil action that denies a pretrial request for admission without a reasonable basis can be ordered to pay to the propounding party the reasonable expenses incurred—including attorney fees and costs—in proving the matter covered by the request (costs of proof). Plaintiff, appellant, and cross-respondent City of Glendale (Glendale) appeals from a postjudgment order granting, in part, a motion by defendant, respondent, and cross-appellant Marcus Cable Associates, LLC, dba Charter Communications, Inc. (Charter) to recover such costs of proof under section 2033.420. Charter cross-appeals from that portion of the trial court's order denying, in part, its motion.

We hold that the limitation on remedies in 47 U.S.C. § 555a(a) (section 555a(a))[1] precluded the trial court from awarding Charter costs of proof under section 2033.420. We therefore reverse that portion of the trial court's order granting, in part, Charter's motion for recovery of costs of proof[2] and remand the matter to the trial court with instructions to enter a new order denying Charter's motion for recovery of costs of proof in its entirety.

---

[1]    Section 555a(a) is part of the Cable Communications Policy Act of 1984, 47 U.S.C. section 521 et seq. (Federal Cable Act).

[2]    Because our disposition under federal law requires the denial of Charter's motion to recover costs of proof in its entirety, we do not reach Charter's cross-appeal concerning the denial, in part, of its motion under state law.

## BACKGROUND

This action arose from a dispute between Glendale and Charter over whether Charter, as Glendale's cable service provider, could realign Glendale's public, educational, and government (PEG) channel numbers without Glendale's consent. Glendale initiated the litigation by filing a complaint and a request for a temporary restraining order preventing Charter from realigning its PEG channel numbers. In its operative cross-complaint, Charter sought declarations that it had no obligation to provide Glendale with free video programming and cable modem services or with free institutional network (I-Net) services; it was entitled to recover possession and control of the I-Net and damages for wrongful possession and detention of the I-Net; it had the right to realign Glendale's PEG channel numbers; Glendale was unlawfully using PEG access fees; and **it** had a right to offset past PEG access fee overpayments against future franchise fee payments.

After the trial court's rulings on the parties' summary judgment and summary adjudication motions, the following issues remained for trial on the merits: Charter's request for a declaration concerning its continuing duty to provide free I-Net services; Charter's claim for recovery of the I-Net and damages for past use of the I-Net; Glendale's claim that Charter had given Glendale a permanent right of possession or use of the I-Net; and Charter's request for a declaration that Glendale had used PEG fees for operating costs and therefore had collected from Charter an unlawful franchise fee.

Following a court trial, the trial court issued a statement of decision that included detailed factual findings and ruled in Charter's favor on certain of the I-Net issues, concluding that Glendale had no ownership interest in the I-Net and Charter had no continuing duty to provide free I-Net services and facilities. The trial court also ruled in favor of Charter on the PEG fee issue, concluding that Charter was entitled to a declaration that (i) Glendale used PEG fees for purposes other than capital costs associated with PEG channel facilities and such use was prohibited under the State Cable

3

Act[3] and the Federal Cable Act because Glendale was collecting a franchise fee in excess of the federal limit of five percent; and (ii) the State Cable Act and the Federal Cable Act prohibited any use of PEG fees by Glendale for any purpose other than capital costs, unless such fees were treated as part of a franchise fee.

Charter filed an appeal from the summary adjudications against it. Glendale cross-appealed from the summary adjudication against it and from that part of the judgment based on the trial court's decisions adverse to Glendale on certain of its claims following trial. On appeal, we affirmed the trial court's summary adjudication orders and that portion of the judgment based on the trial court's rulings following trial. (*City of Glendale v. Marcus Cable Associates, LLC* (2014) 231 Cal.App.4th 1359.)

Following entry of judgment, Charter filed a motion to recover its costs of proof under section 2033.420. Glendale opposed the motion, arguing, inter alia, that Charter's request for costs of proof was barred under section 555a(a), which limits the relief that may be obtained against local franchising authorities in actions arising from the regulation of cable service to injunctive and declaratory relief. In ruling on Charter's motion for recovery of costs of proof, the trial court rejected Glendale's section 555a(a) argument, granted the motion, in part, and denied it, in part. Glendale filed a timely notice of appeal from that portion of the order granting the motion to recover costs of proof, and Charter filed a timely notice of cross-appeal from that portion of the order denying its motion.

## DISCUSSION

### A.     Standard of Review and Rules of Statutory Interpretation

Glendale's contention concerning the limitation on remedies in section 555a(a) requires us to interpret that enactment and determine whether it precludes an award of costs of proof under section 2033.420. This is a legal issue we review de novo. (*Regents*

---

[3]     Public Utilities Code section 5800 et seq.

4

*of University of California v. Superior Court* (2013) 222 Cal.App.4th 383, 397.) The Supreme Court reiterated the rules of statutory interpretation as follows: "When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) 'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 [103 Cal.Rptr.2d 751, 16 P.3d 166].)" (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165-166.)

### B.    Analysis

On appeal, Glendale contends, inter alia, that the trial court erred when it granted, in part, Charter's motion to recover costs of proof under section 2033.420. According to Glendale, the award of attorney fees and costs under section 2033.420 was barred under section 555a(a) because that federal enactment limits to injunctive and declaratory relief the remedies available in actions against franchising authorities or other governmental entities that arise from the regulation of cable service. (See *Time Warner Entertainment Co., L.P. v. FCC* (D.C. Cir. 1996) 93 F.3d 957, 975 [no liability for damages against franchising authority in an action arising from regulation of cable service].) As Glendale reads section 555a(a), that provision precludes awards of damages, including awards of attorney fees and costs, in actions such as the instant one that arose from Glendale's

5

regulation of Charter's cable services. Charter argues that section 555a(a) does not preclude the recovery of such costs of proof because that recovery does not arise from the regulation of cable service and, in any event, such recovery is not damages or relief, but rather is a discovery sanction that enables a trial court to control pretrial litigation.[4]

### 1.    *Costs of Proof Under Section 2033.420*

A party to a civil action may propound a written request that another party "admit the genuineness of specified documents, or the truth of specified matters of fact, opinion relating to fact, or application of law to fact." (Code Civ. Proc., § 2033.010; see 2 Witkin, Cal. Evidence (5th ed. 2012) Discovery, § 162, p. 1141.) Section 2033.420 provides, "(a) If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so under [Code of Civil Procedure section 2033.010],

---

[4]    The parties appear to assume that if a state law award of costs of proof under section 2033.420 falls within the damages prohibition of section 555a(a), such an award would be preempted by that federal statute. (See, e.g., *City of Chicago v. Comcast Cable Holdings, L.L.C.* (Ill. 2008) 900 N.E.2d 256, 258-265 [47 U.S.C. § 542(b) preemption]; *Lindstrom v. City of Des Moines* (S.D. Iowa 2007) 470 F.Supp.2d 1002, 1012-1013 [section 555a(a) is a preemption defense to an action for damages, citing *Metro. Life Ins. Co. v. Taylor* (1987) 481 U.S. 58, 63].) "Under the doctrine of preemption, federal law prevails over state law if Congress has expressed an intent to occupy a given field in which federal law is supreme. But even if there is no such intent, state law is preempted if it conflicts with federal law so that it is impossible to comply with both, or if the state regulations stand as an obstacle to the accomplishment of the full purposes that Congress sought to achieve. (*Pac. Gas & Elec. v. Energy Resources Comm'n.* (1983) 461 U.S. 190, 203-205 [75 L.Ed.2d 752, 765, 103 S.Ct. 1713, 1722].)" (*Elsworth v. Beech Aircraft Corp.* (1984) 37 Cal.3d 540, 548.) "'"States may establish the rules of procedure governing litigation in their own courts," even when the controversy is governed by substantive federal law. (*Felder v. Casey* (1988) 487 U.S. 131, 138 . . . .) "By the same token, however, where state courts entertain a federally created cause of action, the 'federal right cannot be defeated by the forms of local practice.'" (*Ibid.*) Thus, . . . a state procedural rule must give way "if it impedes the uniform application of the federal statute essential to effectuate its purpose, even though the procedure would apply to similar actions arising under state law." (*McCarroll v. L.A. County etc. Carpenters* (1957) 49 Cal.2d 45, 61, 62 . . . .)'" (*Siegel v. Prudential Ins. Co.* (1998) 67 Cal.App.4th 1270, 1282, quoting *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 409.)

and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. [¶] (b) The court shall make this order unless it finds any of the following: [¶] (1) An objection to the request was sustained or a response to it was waived under Section 2033.290. [¶] (2) The admission sought was of no substantial importance. [¶] (3) The party failing to make the admission had reasonable ground to believe that that party would prevail on the matter. [¶] (4) There was other good reason for the failure to admit." As stated in *Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 753, "'[t]he determination of whether "there were no good reasons for the denial," whether the requested admission was "of substantial importance," and the amount of expenses to be awarded, if any, are all within the sound discretion of the trial court.'"

California courts have recognized that requests for admission differ in purpose from other commonly used discovery devices, such as interrogatories, document demands, or depositions.[5] Although the requests for admission mechanism is included in the Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.), it has long been recognized that requests for admission are "not really a discovery procedure." (*Lieb v. Superior Court of Orange County* (1962) 199 Cal.App.2d 364, 367; *Haseltine v. Haseltine* (1962) 203 Cal.App.2d 48, 61 ["Requests for admissions are not instruments of discovery. '[Former s]ection 2033 like its counterpart Federal Rule 36, contains closely

---

[5] One treatise on California civil discovery explains that "[t]he admission request differs fundamentally from the other five discovery tools (depositions, interrogatories, inspection demands, medical examinations, expert witness exchanges). Those devices principally seek to *obtain* proof for use at trial. In marked contrast, admission requests seek to *eliminate* the need for proof: 'The purpose of the admission procedure . . . is to limit the triable issues and spare the parties the burden and expense of litigating undisputed issues.' Sometimes the admissions obtained will even leave the party making them vulnerable to summary judgment." (1 Hogan and Weber, Cal. Civil Discovery (2d ed. 2005) Requests for Admissions, § 9.1, p. 9-2, fn. omitted.)

7

knit provisions calculated to compel admissions *as to all things that cannot reasonably be controverted*"]**.)** Witkin has observed that "[b]efore the enactment of the Civil Discovery Act of 1986, numerous courts were reluctant to label a request for admissions as a discovery device. [Citations.] [¶] The Civil Discovery Act, however, refers to requests for admissions as a way to 'obtain discovery' (Code Civ. Proc., § 2033.010) and lists them among the discovery methods (see Code Civ. Proc., § 2012.010, subd. (e), *supra,* § 2.) This new classification does not, however, work any change in 'the fundamental nature of the admission device.' (Hogan, 1 Cal. Civil Discovery, 2d, § 9.1.)" (2 Witkin, *supra,* § 162 at pp. 1141-1142.)

In *American Federation of State, County, & Municipal Employees v. Metropolitan Water Dist.* (2005) 126 Cal.App.4th 247, the court confirmed the fundamental difference between requests for admission and other discovery devices, stating, ""The primary purpose of requests for admissions is to set at rest triable issues so that they will not have to be tried; they are aimed at expediting trial. [Citation.] The basis for imposing sanctions . . . is directly related to that purpose. Unlike other discovery sanctions, *an award of expenses . . . is not a penalty*. Instead, it is designed to reimburse reasonable expenses incurred by a party in proving the truth of a requested admission . . . [citations] such that trial would have been expedited or shortened if the request had been admitted." [Citations.]' (*Stull v. Sparrow* (2001) 92 Cal.App.4th 860, 865 [112 Cal.Rptr.2d 239].) [¶] ''The determination of whether a party is entitled to expenses under [former Code of Civil Procedure] section 2033, subdivision (o) is within the sound discretion of the trial court." [Citation.]' (*Stull v. Sparrow, supra,* 92 Cal.App.4th at p. 864.)" (*Id.* at pp. 266-267, italics added; see also *Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 509 ["Unlike other discovery sanctions, an award of expenses pursuant to [former Code of Civil Procedure] section 2034, subdivision (c), is not a penalty. Instead, it is designed to reimburse reasonable expenses incurred by a party in proving the truth of a requested admission where the admission sought was 'of substantial importance' ([former Code of Civil Procedure] § 2034, subd. (c); *Hillman v. Stults* (1968) 263 Cal.App.2d 848,

884 [70 Cal.Rptr. 295]) such that trial would have been expedited or shortened if the request had been admitted"].)[6]

Requests for admission are not restricted to facts or documents, but apply to conclusions, opinions, and even legal questions. (See 2 Witkin, *supra,* § 174 at p. 1164; *Burke v. Superior Court of Sacramento County* (1969) 71 Cal.2d 276, 282.) Thus, requests for admission serve to narrow discovery, eliminate undisputed issues, and shift the cost of proving certain matters. As such, the requests for admission mechanism is not a means by which a party obtains additional information, but rather a dispute-resolution device that eliminates the time and expense of formal proof at trial. (See *Hansen v. Superior Court* (1983) 149 Cal.App.3d 823, 829 ["Such requests are a useful and important part of the dispute-resolution mechanism . . . ."]

Unlike sanctions imposed as a penalty for the nine types of discovery misconduct itemized in Code of Civil Procedure section 2023.010, an award of costs of proof for a denial of a request for admission involves the weighing of a number of factors, such as whether the matter denied was of "substantial importance;" whether there was a "reasonable basis" for the denial; whether the party making the denial knew or should have known at the time that the requested matter was of "substantial importance" and was true; whether there were "other good reasons for the denial"; and whether and to what extent the responding party made a good faith effort otherwise to resolve the matter. (See § 2033.420; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) ¶¶ 8:1406-8:1412, pp. 8G-38-8G-40; 2 Witkin, *supra,* § 177 at pp. 1151-1154; *Brooks v. American Broadcasting Co., supra,* 179 Cal.App.3d at pp. 511-512.) Also, unlike sanctions for discovery misconduct, costs of proof under section

---

**6** Because "the current language of . . . section 2033.420 is similar to the current language of Federal Rules of Civil Procedure, rule 37(c)(2)" it is appropriate to "'look to federal court decisions interpreting the parallel provisions of rule 37(c) . . . .'" (*Estate of Manuel* (2010) 187 Cal.App.4th 400, 404.) The goal of Rule 37(c)(2), like the Federal Rules in general, is "'to secure the just, speedy, and inexpensive determination of every action.'" (*Marchand v. Mercy Medical Ctr.* (9th Cir. 1994) 22 F.3d 933, 936, quoting Fed. R. Civ. P., rule 1, 28 U.S.C.)

2033.420 are awarded after trial; therefore, an award of such costs is not a device used by trial courts to control pretrial proceedings.  Instead, as with attorney fees and costs awarded after judgment to a prevailing party, an award of costs of proof is a fee shifting and cost allocation mechanism that is available against parties.  And, unlike sanctions for discovery misconduct, such costs cannot be awarded against attorneys.  (*Estate of Manuel, supra,* 187 Cal.App.4th at p. 402 [costs of proof may be imposed only against a party, not a party's attorney].)

### 2.    *Section 555a(a)*

Section 555a(a) provides, in pertinent part, "(a)  *Suits for damages prohibited*.  In any court proceeding pending on or initiated after the date of enactment of this section . . . involving *any claim against a franchising authority* or other governmental entity, or any official, member, employee, or agent of such authority or entity, *arising from the regulation of cable service* or from a decision of approval or disapproval with respect to a grant, renewal, transfer, or amendment of a franchise, any relief, to the extent such relief is required by any other provision of Federal, State, or local law, *shall be limited to injunctive relief and declaratory relief.*"  (§ 555a(a), italics added.)

As the Court of Appeals explained in *Jones Intercable v. City of Chula Vista* (9th Cir. 1996) 80 F.3d 320, "Congress found that, prior to passage of section 555a(a), municipalities were facing unexpected and 'potentially crippling' civil damage liability claims in relation to their regulation of cable operators.  (Footnote omitted.)  *See Daniels Cablevision, Inc. v. United States,* 835 F.Supp. 1, 11-12 (D.D.C. 1993).  In response, Congress exempted municipalities from civil damages liability arising out of the local regulation of cable services in order 'to preserve the municipal franchising and regulation scheme envisioned by the [Cable Communications Policy Act of 1984].'  *Id.* at 12.  [¶] We conclude that section 555a(a) promotes Congress's substantial interest in having municipalities regulate cable operators without fear of potentially overwhelming damage awards.  The statute is aimed at improving Congress's scheme for regulating cable systems . . . ."  (*Id.* at p. 326.)

10

The prohibition against providing damages relief in section 555a(a) has been construed broadly. For example, in our prior published opinion in this case, we affirmed the trial court's ruling that Charter's request for a declaration of a right to offset past PEG fee overpayments against future franchise fees was barred by the damages prohibition in section 555a(a). (*City of Glendale v. Marcus Cable Associates, LLC, supra,* 231 Cal.App.4th at pp. 1376-1378.) We reasoned that "[a]lthough Charter labeled its first cause of action as one for declaratory relief, the underlying purpose of that claim was to obtain a declaration that Glendale was obligated to repay or reimburse Charter for alleged past overpayments of PEG fees. . . . Charter's requested declaration would result in a judicially recognized right of offset, the practical effect of which would be the recoupment of money allegedly wrongfully obtained from Charter by Glendale, i.e., the recovery of damages. 'Whatever their semantic differences, the statutory and dictionary definitions of "damages" share several basic concepts. Each requires there to be "compensation," [fn. omitted] in "money," "recovered" by a party for "loss" or "detriment" it has suffered through the acts of another.' (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 826 [274 Cal.Rptr. 820, 799 P.2d 1253].) We therefore conclude that the trial court correctly determined that Charter's request for a declaration of a right of offset contravened the prohibition against damages in section 555a(a) of the Federal Cable Act. (47 U.S.C. § 555a(a).)" (*City of Glendale v. Marcus Cable Associates, LCC, supra,* 231 Cal.App.4th at p. 1378.)

The federal courts have also interpreted the damages prohibition in section 555a(a) broadly, ruling that in addition to damage awards, the prohibition applies to awards of attorney fees and costs. (See, e.g., *Coplin v. Fairfield Pub. Access TV Comm.* (8th Cir. 1997) 111 F.3d 1395, 1407 (*Coplin*) [because section 555a(a) limited the plaintiff's potential recovery to injunctive and declaratory relief, the plaintiff's allegations that he was entitled to monetary damages and attorney fees failed to state a claim upon which relief could be granted under 42 U.S.C. section 1988 for a violation of 42 U.S.C. section 1983]; *Cable TV Fund 14-A, LTD, dba Jones Intercable v. City of Naperville* (N.D. Ill. 1997) 1997 U.S. Dist. LEXIS 7336, * 22-23 [the express language of section 555a(a), as

11

well as the legislative history of that section, precluded the trial court from awarding attorney fees in an action brought under 28 U.S.C. section 1983 against a city arising out of the city's decision to grant a franchise].)

In dismissing pursuant to section 555a(a) claims for compensatory damages, punitive damages, costs, and attorney fees (42 U.S.C. section 1988),[7] the court in *Brennan v. William Paterson College* (N.J. 2014) 34 F.Supp.3d 416, 424 (*Brennan*) stated as follows: "It appears that at least two Courts of Appeals have found that the plain language of the Cable Act precludes the award of money damages, and potentially attorney's fees too, in a suit that asserts violations of the Constitution and the [Federal] Cable Act arising from the regulation of cable television. (*See Coplin*[, *supra,*] 111 F.3d [at p.] 1407 (8th Cir. 1997) (finding that Section 555a 'limits [plaintiff's] potential recovery in this action [based on alleged First Amendment violations and brought pursuant to 42 U.S.C. § 1983] to declaratory and injunctive relief,' and that 'we need not interpret the legislative history of the [Federal] Cable Act because its statutory language is clear'); *Jones Intercable v. City of Chula Vista*[, *supra,*], 80 F.3d [at pp.] 324-325 (9th Cir. 1996) (affirming district court's finding that Section 555a(a) precludes money damages, though not speaking directly to attorney's fees; *cf. Edwards v. Armstrong,* 1995 U.S. App. LEXIS 16545 (6th Cir. June 30, 1995) (finding that the 'straightforward, encompassing and imperative language of § 555a' bars constitutional and [Federal] Cable Act claims to the extent that they seek money damages, though leaving open that attorney's fees might be recoverable). One district court has explicitly held that the [Federal] Cable Act bars attorney's fees, even those ordinarily recoverable under 42 U.S.C. § 1988. *Cable TV Fund 14-A v. City of Naperville*[, *supra,*] 1997 U.S. Dist. LEXIS 7336 at Part III.A.6 (N.D. Ill. May 21, 1997) (granting motion to dismiss to the

---

[7] The award of fees under 42 U.S.C. section 1988, subdivision (b) is discretionary (see *Rossello-Gonzalez v. Acevedo-Vila* (1st Cir. 2007) 483 F.3d 1, 5), and under 42 U.S.C. section 1983, such fees are awarded to a defendant only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." (*Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 421).

extent Plaintiff's Section 1983 claim alleging constitutional violations in the city's refusal to allow a channel to be operated without a city-wide franchise and seeking remedies other than injunctive and declaratory relief)."

The court in *Brennan, supra,* 34 F.Supp.3d at page 424 concluded that although the Third Circuit had not addressed the issue, the "statute . . . and the case law [were] clear."  The court cited *Coplin, supra,* 111 F.3d at pages 1395 through 1400 and explained, "*Coplin* also made it clear that Section 555a(a) applies generally to disputes over cable service, irrespective of the particular cause of action:  'At the heart of [the plaintiff's] action is a dispute over the regulation of cable service:  he brings an action disputing a governmental entity's right to regulate the content carried on a public access cable service.  As a result, [the plaintiff's] action arises from the regulation of cable service within the meaning of § 555a(a).'  *Id.* at 1408; *see also McClellan v. Cablevision of Conn.,* 149 F.3d 161, 168 n. 15 (2d Cir. 1998); *Caprotti v. Town of Woodstock,* 94 N.Y.2d 73, 75-79, 721 N.E.2d 957, 699 N.Y.S.2d 707 (1999)."  (*Brennan, supra,* 34 F.Supp.3d at p. 425.)  The court added, "[The plaintiff] does not cite any case law to the contrary.  He does cite civil rights statutes that explicitly authorize recovery of damages and attorney's fees.  (*See* Br. Opp. Wayne's Mot. to Dismiss. at 26-29 (citing, *e.g.,* N.J.S.A. §§ 10:6-2(c), (d), (f); 42 U.S.C. § 1988)).  But a Congress that possesses the power to confer such a right of recovery can also limit it or take it away.  Section 555a(a) expressly acknowledges that the damages remedies it de-authorizes are those which would otherwise be 'required by any other provision of Federal, State or local law.'  47 U.S.C. § 555a(a)."  (*Id.* at p. 425.)

Although the court in *Brennan, supra,* 34 F.Supp.3d at page 424, footnote 7, concluded that "[g]iven the clear wording of the statute, . . . resort to legislative history is [not] necessary or appropriate," the court nevertheless referred to a case that pointed out that the legislative history of section 555a(a) confirms that Congress intended to prohibit awards of attorney fees and costs in actions against franchising authorities arising out of their regulation of cable services.  (See *Cable TV Fund 14-A, dba Jones Intercable v. City of Naperville, supra,* 1997 U.S. Dist. LEXIS 7336, at ∗ 33.)  As the court in that case

13

explained, the Senate bill's version of section 555a(a) included attorney fees and costs in the types of relief available in actions against franchising authorities. (*Cable TV Fund 14-A, dba Jones Intercable v. City of Naperville, supra*, 1997 U.S. Dist. LEXIS 7336, at * 33.) That version provided, "In any court proceeding pending on the date of enactment of this section, or initiated after such date, involving any claim under the Civil Rights Act asserting a violation of first amendment constitutional rights by a franchising authority or other governmental entity or by an official, member, employee, or agent of such authority or entity, arising from actions expressly authorized or required by this title, any relief shall be limited to injunctive relief, declaratory relief, *and attorney's fees and legal costs*, except as provided in subsection (b)." (Sen. No. 12, 102nd Cong., 1st sess., § 13 (1991-1992, italics added.) Congress, however, adopted the House's version, which, as set forth above, did not specify attorney fees and costs as an allowable remedy. (Sen. No. 12, 102nd Cong., House Amend. § 17 (1991-1992).

As recognized by the authorities cited above, the language of section 555a(a) expressly limits the type of relief recoverable in suits against franchising authorities that arise from their regulation of cable service. That provision begins with the caption, "Suits for damages prohibited," and goes on to restrict the relief available in "any court proceeding"—"to the extent such relief is required by any other provision of . . . State . . . law"—to the equitable remedies of injunctive and declaratory relief. Both state and federal courts have interpreted that language as constituting a broad prohibition against the recovery of damages, including the recovery of discretionary or nondiscretionary attorney fees and costs, that would otherwise be available under any other provisions of federal or state law.

In the trial court, Charter sought monetary relief against Glendale under state law in the form of an award of reasonable attorney fees and costs under section 2033.420 as compensation for the expenses it incurred in proving certain matters it had requested Glendale to admit prior to trial. The relief requested was directly related to its action against Glendale, which action, in turn, arose directly from Glendale's regulation of Charter's cable service within Glendale. The relief requested under section 2033.420 was

14

therefore in the nature of damages, i.e., compensation in money recovered by a party for a loss or detriment it suffered through the acts of another. (*AIU Ins. Co. v. Superior Court, supra,* 51 Cal.3d at p. 826.) Based upon our analysis and consistent with the weight of the federal authorities discussed above, we conclude that the relief Charter sought, and which the trial court partially granted, was prohibited by section 555a(a).

Charter contends that the relief it sought under section 2033.420 was not prohibited by the language of section 555a(a) because that relief was not granted in an action "arising from" Glendale's "regulation of cable service," but rather arose from Glendale's pretrial litigation decision to deny the requests for admission in question. But, as explained above, the relief Charter sought was monetary compensation for the expenses incurred in proving certain facts at trial—facts that were necessary to establish its claims against Glendale, which claims arose directly from Glendale's regulation of Charter's cable service. Thus, under the plain and common sense meaning of the "arising from" language in section 555a(a), the costs of proof that the trial court awarded were directly related to Charter's claims against Glendale and were therefore prohibited by section 555a(a). (See *Coplin, supra,* 111 F.3d at p. 1408; *Brennan, supra,* 34 F.Supp.3d at p. 424.) If, as held by the authorities, attorney fees and costs awarded in actions arising from the regulation of cable service are prohibited under section 555a(a), then it follows that costs of proof—attorney fees and costs awarded under section 2033.420 in such actions would also be prohibited.

Charter also argues that the costs of proof it sought in the trial court were not "relief" or damages, but rather discovery sanctions. As the authorities discussed above make clear, however, the award of costs of proof available under section 2033.420 is not an "instrument of discovery"; it is part of a procedural mechanism intended to expedite trial by reducing the number of triable issues that must be adjudicated. Moreover, those authorities also establish that an award of costs of proof under section 2033.420 is not a

15

"discovery sanction" or a "penalty"[8] for engaging in "misuses of the discovery process." (Code Civ. Proc., § 2023.010.) As explained by the court in *Estate of Manuel, supra,* 187 Cal.App.4th at page 405, discovery sanctions for the nine types of discovery misconduct itemized in Code of Civil Procedure section 2023.010 do not apply to the denial of a request for admission without a reasonable basis. Indeed, "[a]t no point in . . . section 2033.420 are [the] 'expenses' [awarded under that section] categorized as a 'sanction.'" (*Estate of Manuel, supra,* 187 Cal.App.4th at p. 405, fn. 30.) Instead, the expenses recoverable under section 2033.420 reimburse the party that propounded the request for admission for the attorney fees and costs incurred in proving at trial the genuineness or truth of a document or matter covered by the request. The discovery misuse or abuse for which discovery sanctions are imposed includes improperly using discovery, failing to respond, disobeying a court order, or failing to meet and confer. (Code Civ. Proc., § 2023.010.) Discovery sanctions are not imposed for providing an incorrect response. Costs of proof in connection with requests for admission are awarded if the response is established to be incorrect—not for the misuse of the discovery process. Because those costs of proof expenses compensate a party for a loss or detriment caused by the act of another, they are more akin to damages or a traditional statutory award of attorney fees to a prevailing party, which damages and awards the authorities hold are prohibited under section 555a(a).[9]

---

[8] The court in *Duncan v. Workers' Comp. Appeals Bd.* (2008) 166 Cal.App.4th 294, 303 defined a "sanction" as a penalty or punishment for failing to comply with the law; Black's Law Dictionary defines a sanction as "2. A penalty or coercive measure that results from a failure to comply with a law, rule, or order <a sanction for discovery abuse>." (Black's Law Dict. (10th ed. 2014) p. 1541, col. 2.)

[9] In reaching this conclusion, we do not determine whether an award of attorney fees and costs as a sanction for discovery misconduct would be precluded by section 555a(a).

16

## DISPOSITION

The trial court's order granting, in part, Charter's motion for recovery of costs of proof is reversed and the matter is remanded to the trial court with directions to enter a new order denying Charter's motion for recovery of costs of proof in its entirety for the reasons stated herein. Our disposition necessarily disposes of Charter's cross-appeal. No costs are awarded on appeal.

**CERTIFIED FOR PUBLICATION**


MOSK, Acting P. J.

We concur:


KRIEGLER, J.


GOODMAN, J.[*]

---

[*] Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.